☑ FILED ___ ENTERED
___ LOGGED ___ RECEIVED
9:16 am, Sep 17 2021
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

Case 1:22-cr-00317-SAG   Document 1-1   Filed 09/17/21   Page 1 of 10

1:21-mj-2453

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Tonya Matney, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") hired by the U.S. Customs Service, now employed by the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since March 2003. I am a graduate of the Criminal Investigator Training Program and the U.S. Customs Basic Enforcement School, Special Agent Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. I am currently assigned to the Counter-Proliferation Investigations Task Force in the HSI Baltimore (MD) field office ("HSI Baltimore"). My responsibilities include the investigation of the illegal exportation of commercial and military technology, including violations related to the export of firearms and other "dual-use goods". As part of my investigations into illegal exports, I have also investigated criminal violations related to money laundering, smuggling, wire fraud, mail fraud, and other crimes. I have led and/or participated in criminal investigations involving controlled delivery operations, undercover transactions, the execution of search and arrest warrants, the review of consensual-recorded conversations, the cultivation and use of confidential informants, and various types of physical and electronic surveillance. I have participated in the execution of multiple federal search and arrest warrants, and have seized evidence concerning violations of U.S. law.

2. Through my training and experience, as well as consultation with other law enforcement agents, I have become familiar with a variety of means through which individuals and entities import and export merchandise in violation of federal laws. I am generally aware of the methods used to export U.S. goods illegally, and the types of financial transactions used to

support those illegal activities, including a variety of means through which firearms are exported unlawfully. I am also familiar with illegal export schemes that involve the transshipment of firearms and other goods through third parties to restricted or sanctioned end users. I have statutory authority from the Homeland Security Act of 2002 to execute warrants issued under the authority of the United States and to make arrests.

3.      This Affidavit is submitted in support of a Criminal Complaint charging **ERIC NANA KOFI AMPONG COKER** ("**COKER**") with: (1) attempting to export items identified on the Commerce Control List, that is firearms, from the United States, without first obtaining the required license or written approval from the U.S. Department of Commerce, in violation of Title 50, United States Code, Section 4819; and (2) attempting to export and send from the United States to a place outside the United States, that is Ghana, any merchandise, article or object (here, firearms) contrary to any law or regulation of the United States, in violation of Title 18, United States Code, Section 554.

**The Export Control Reform Act of 2018 and the Export Administration Regulations**

4.      Pursuant to the Export Control Reform Act of 2018 ("ECRA"), Pub. L. No. 115-232, tit. 17, subtitle B, 132 Stat. 2208 (2018) (codified at 50 U.S.C. §§ 4801-4852), it is illegal to export dual-use items (*i.e.*, items with civilian and military, terrorism, weapons of mass destruction, or law-enforcement-related applications) outside the United States if an export license from the Department of Commerce's ("DOC") Bureau of Industry and Security ("BIS") is required and no such license is obtained. 50 U.S.C. §§ 4801 & 4819.

5.      Pursuant to its authority under the ECRA, the BIS reviews and controls the export of certain items, including commodities, software, and technologies from the United States to foreign countries through the Export Administration Regulations ("EAR"). In particular, the EAR restricts the export of items that could make a significant contribution to the military potential of

2

1:21-mj-2453

other nations or that could be detrimental to the foreign policy or national security of the United States, and impose certain licensing and other requirements for items subject to the EAR for export from the United States. "Export" is defined in the EAR as an "actual shipment or transmission out of the United States." 15 C.F.R. § 734.13(a)(1).

6. The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. § 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN"), based on their technical characteristics. Each ECCN has export control requirements depending on their destination, end user, and end use.

7. Since March 9, 2020, and throughout the relevant period of this Complaint, certain types of firearms have been listed on the CCL and controlled under ECRA and EAR. Most such firearms are categorized under ECCN 0A501, which imposes export controls on firearms and related commodities for, *inter alia*, reasons of national security and regional stability. In relevant part, ECCN 0A501 controls "[n]on-automatic and semi-automatic firearms equal to .50 caliber (12.7mm) or less." Supp. No. 1 to Part 774. The firearms at issue in this Complaint—specifically, five 9mm pistols—are each controlled under ECCN 0A501.

8. The export of items controlled under ECCN 0A501 to Ghana requires an export license from the Department of Commerce ("DOC"). *See* Supp. No. 1 to Part 738 (setting forth country-specific export controls). As a result, the export of controlled firearms to Ghana, including the five handguns discussed herein, requires a license from the DOC.

9. It is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to the ECRA. 50 U.S.C. § 4819. Willful violations of the ECRA are crimes punishable by a prison term of up to 20 years

and fines of up to $1,000,000. 50 U.S.C. § 4819(b).

## Smuggling

10. As set forth in 18 U.S.C. § 554, "[w]hoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both."

11. Because this Affidavit is offered for the limited purpose of establishing probable cause to support the Criminal Complaint, it contains only a summary of relevant facts. I have not included each and every fact known to me concerning the entities, individuals, and the events described in this Affidavit. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

12. The statements made in this Affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers; and (c) the training and experience of myself and other law enforcement agents and officers. All statements are related in substance and in part, and to the best of my knowledge are true and correct.

## PROBABLE CAUSE

13. HSI, along with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and other law enforcement agencies, are investigating **COKER** and others for various offenses, including but not limited to the illegal export of firearms to Ghana.

14. According to immigration records, **COKER** is a Ghanaian citizen who arrived in

the U.S. on or about February 14, 2005, on a Nonimmigrant Visa. **COKER**'s Enlistment Record contained in his Immigration file indicates that he enlisted in the U.S. Army in 2010. **COKER** became a naturalized U.S. Citizen on or about May 6, 2010. **COKER** receives a monthly entitlement payment from the Department of Veterans Affairs (VA).

Firearm Purchases

15.  The investigation to date has established that **COKER** purchased at least 81 firearms since 2017. Specifically:

    a.  Fox's Firearms ("Fox's"), a Federal Firearms Licensee ("FFL") located at 11200 Scaggsville Road, Unit 125, Laurel, MD 20723, has transferred fifty-five (55) firearms to **COKER** since 2018. **COKER** listed 7174 Talisman Lane, Columbia, MD (hereafter, "Subject Premises") as the residential address for all 55 firearms that he purchased from Fox's.

    b.  Additionally, since 2017 **COKER** obtained twenty-one (21) firearms from 2 A Sales & Supplies ("2 A"), an FFL located at 8610 Baltimore Washington Boulevard, Suite #209, Jessup, Maryland. As with the firearms from Fox's, **COKER** listed the Subject Premises as the residential address for all 21 firearms he obtained from 2 A.

    c.  Further, in 2020, **COKER** purchased five (5) firearms from Haze Line Guns, an FFL located at 12745 Laurel Bowie Road, Laurel, Maryland. **COKER** likewise listed the Subject Premises for all 5 firearms that he bought from Haze Line Guns.

16.  In connection with the aforementioned firearms purchases, **COKER** completed a Firearms Transaction Record known as ATF Form 4473. The form is required to determine whether an individual is prohibited by Federal or State law from receiving a firearm. ATF Form 4473 contains the following admonishment: "Any person who exports a firearm without a proper authorization from either the Department of Commerce or the Department of State, as applicable,

is subject to a fine of not more than $1,000,000 and up to 20 years imprisonment."

17. In 2019, **COKER**, through the Maryland State Police, applied for and received status as a Regulated Firearms Collector. This status waives Maryland's 30-day / one-month requirement to wait to purchase another regulated firearm. On his application, he listed student/veteran as his occupation. **COKER** also listed the Subject Premises as his residential address in his Regulated Firearms Collector application to the Maryland State Police.

Shipping Records

18. On or about April 30, 2021, I subpoenaed records from COPART, an online vehicle auction house. In 2017 and 2018, **COKER** sent at least twenty-two (22) money orders to COPART. The responsive records from COPART identified 3 used, passenger vehicles that had been purchased by a company named J OF ALL TRADES. The vehicle purchases made by J OF ALL TRADES were conducted using the money orders sent by **COKER**.

19. On or about May 26, 2021, I queried the Automated Export System ("AES") database, using the vehicle identification number ("VIN") associated with each of the three (3) used, passenger vehicles identified from the COPART records production. The query yielded electronic export information ("EEI") for three containerized shipments that had been exported on February 26, 2018, March 9, 2018, and February 7, 2020 from the Port of Baltimore to "BLK 200, Bohyen, Kumasi, Ghana".[1]

---

[1] The U.S government, through the U.S. Census Bureau, requires the filing of EEI under Title 13, United States Code, Section 305 and the Foreign Trade Regulations, Title 15 Code of Federal Regulations, Part 30. An essential and material part of the EEI is information concerning the ultimate consignee and the country of ultimate destination of the export. In many cases, the identity of the ultimate consignee determines whether the goods may be exported without specific authorization from the U.S. government. The EEI is a statement to the U.S. government that the transaction occurred as described. The EEI is used by the United States Bureau of Census to collect trade statistics and by Bureau of Industry and Security, Department of Commerce, for export control purposes. *See* 15 CFR § 758.1. In general, EEI must be filed in the

20. The EEI listed an individual known to law enforcement ("Individual 1") as the U.S. Principal Party in Interest ("USPPI"), also known as the "Exporter of Record."[2] The EEI also identifies the "Ultimate Consignee" for each shipment, which identifies the entity or individual who will receive the shipment upon arrival. The EEI listed a second individual known to law enforcement ("Individual 2") as the "Ultimate Consignee" for one of the identified shipments, while the other two shipments listed Kwame MMA VENTURES as the Ultimate Consignee. All three shipments listed "BLK 200 Bohyen, Kumasi, Ghana" as the address for the Ultimate Consignee. Individual 2 is believed to be a foreign national residing in Ghana.

Law Enforcement Surveillance

21. As detailed below, law enforcement agents conducted surveillance of **COKER** and the Subject Premises on multiple days in April and May 2021.

22. On April 13, 2021, law enforcement observed a black Toyota sedan parked in front of the Subject Premises, bearing Maryland license plate 8CP1491. A check of the Maryland Motor Vehicle Administration database revealed that the vehicle was registered to **COKER** at the Subject Premises.

23. On April 30, 2021, law enforcement observed **COKER** enter Fox's with a blue backpack. A review of receipts confirms that **COKER** obtained seven firearms from Fox's on this date. Further, law enforcement observed **COKER** enter Fox's carrying a blue backpack on one shoulder and then exit Fox's with a second bag in his left hand. They then observed **COKER**

---

AES for shipments for which export licenses are required and for exports of goods valued at more than $2,500.

[2] According to the Census regulations, the USPPI is the person in the United States that receives the primary benefit, monetary or otherwise, from the transaction. Generally, the USPPI is the U.S. seller or manufacturer. If a foreign entity is in the United States at the time the items are purchased or obtained for export, the foreign entity may be appropriately listed as USPPI. 15 C.F.R. § 30.1.

bring the bags back to the Subject Premises using a gold Subaru bearing license plate 9EN4952, registered to **COKER** at the Subject Premises.

24. On May 27, 2021, law enforcement once again saw **COKER** enter Fox's. A review of receipts confirms that **COKER** obtained four firearms from Fox's on this date. Law enforcement watched **COKER** receive the four firearms, along with a fifth firearm that had been under repair at Fox's. Law enforcement then observed **COKER** place all five firearms in a blue backpack, place the backpack in his trunk, leave Fox's, and return to the Subject Premises. Once there, **COKER** retrieved the blue backpack from the trunk and entered the Subject Premises. Later that day, law enforcement watched **COKER** leave the Subject Premises carrying a grey suitcase and place it in the trunk of his Subaru.

25. Later, on May 28, 2021, law enforcement observed **COKER** at Lot 168, located on Market Place, Laurel, MD 20724. Lot 168 is described by law enforcement as an industrial zone fenced lot wherein vehicle trailers have been observed dropping off and picking up cars that are later loaded into shipping containers. **COKER** retrieved the grey suitcase from the Subaru's trunk and was observed meeting with Individual 1.

26. On or about May 29, 2021, HSI and Customs and Border Protection ("CBP") conducted a border search at Detroit Wayne International airport where **COKER** was set to depart the U.S. for Ghana. Agents detained three mobile phones and one laptop. In **COKER**'s checked luggage, agents found several foam cutouts for firearms—similar to the packaging within new gun cases—in his luggage lining.

27. On June 3, 2021, law enforcement observed a shipping container in Lot 168 bearing the markings MRSU3044349.

28. On or about the same date, I conducted a query of the AES database using container

number: MRSU3044349 ("the Container"). CBP provided that the Container was scheduled to depart the Port of Baltimore on or about June 14, 2021, and was destined to arrive in port at Tema, Ghana. The USPPI was listed as Individual 1 at an address in Maryland. The Ultimate Consignee was listed as Individual 2, BLK 200 Bohyen, Kumasi, Ghana. The listed contents of the Container included a used 2018 Toyota Corolla, VIN: 2T1BURHE4JC007073 ("Toyota Corolla").

29. I have also reviewed the Container's dock receipt.[3] The dock receipt listed **COKER** as the owner of the Toyota Corolla.

30. On or about June 8, 2021, law enforcement conducted a full examination of the contents of the Container.[4] Once opened, the contents of the Container consisted of four vehicles, including the Toyota Corolla.

31. **COKER**'s name was written on cardboard on top of the Toyota Corolla. A grey suitcase—similar to the one that **COKER** retrieved from the Subaru—was located in the trunk of the Toyota Corolla. Agents found the five following firearms in the lining of the grey suitcase, wrapped in plastic and inside socks:

   a. a SCCY Industries, LLC, Model CPX-2 9mm pistol bearing serial# C123450;
   b. a Mossberg, Model MC1SC 9mm pistol bearing serial# 048329C;
   c. a Smith & Wesson, Model SD9VE 9mm pistol bearing serial# FDF2031
   d. a HS Produkt, Model XD-9 9mm pistol bearing serial# BA239111 (made in Croatia and imported by Springfield Armory, Geneseo, Illinois); and

---

[3] In my training and experience, I know that a dock receipt is issued by a shipping company to acknowledge that goods have been received for shipment, and it lists all the parties to the shipment. The dock receipt is required to be completed prior to the export of any shipping container.
[4] It was confirmed that the Container was sealed before it was opened on this occasion.

9

  e. a Sarsilmaz (Sar Arms), Model B6 9mm pistol bearing serial# T1102-21E52242

32. These are the same firearms that **COKER** obtained from Fox's on May 27, 2021, as described in paragraph 24 and confirmed by purchase receipts. Agents also found eight 9mm pistol magazines, green packaging wrap, and a shipping label with **COKER**'s name.

33. As for the firearms and magazines, I obtained a Licensing Determination from the Department of Commerce which confirmed that the firearms and magazines required a license for export to Ghana. On July 7, 2021, a search of the Commerce USXPORTS Exporter Support System, which is the database of export license applications and granted Department of Commerce export licenses, yielded no results for **COKER**, Individual 1, or Individual 2.

## CONCLUSION

34. Based on my training and experience, and further supported by the facts in this affidavit, I submit that probable cause exists to charge **COKER** with (1) attempting to export items listed on the CCL from the United States, without first obtaining the required license or written approval from the U.S. Department of Commerce, in violation of Title 50, United States Code, Section 4819 and (2) attempting to export articles from the United States, contrary to law or regulation of the United States, in violation of Title 18, United States Code, Section 554.

TONYA D MATNEY
Digitally signed by TONYA D MATNEY
Date: 2021.08.27 09:53:26 -04'00'

Special Agent Tonya Matney,
Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 27 day of August, 2021

The Honorable Thomas M. DiGirolamo
United States Magistrate Judge