

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*P. Michael Cunningham*
*Assistant United States Attorney*
*michael.cunningham@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*Direct: 410-209-4884*
*Main: 410-209-4800*
*Fax: 410-962-3091*

March 2, 2023

Via email
mark@jamescrawfordlaw.com

Mark E. Sobel, Esq.
Law Offices of James E. Crawford, Jr.
    & Associates
999 Corporate Blvd., Ste. 100
Linthicum, MD 21090

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

4:25 pm, Jun 08 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

Re:   *United States v. Ampong Coker*
      Crim. No. SAG-22-0317

Dear Mr. Sobel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Eric Nana Kofi AMPONG COKER (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Friday, March 17, 2023**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense of Conviction</u>

1.   The Defendant agrees to plead guilty to Count One of the Indictment, charging him with illegal export of firearms, in violation of 50 U.S.C. § 4819, and 15 C.F.R. Part 774, Supp. No. 1. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a.   First, that the Defendant exported or attempted to export;

   b.   Second, goods that were on the Commerce Control List and required a license for export;

    c.  Third, that the Defendant did so without first having obtained a license for the export; and

    d.  Fourth, that the Defendant did so willfully.

Penalties

  3.  The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Imprisonment | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 1 | 50 U.S.C. § 4819 | 20 years | 3 years | $1,000,000 | $100 |

    a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

    c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259.

    d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f.  Collection of *Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant

agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a District Court or Magistrate Judge, with or without a jury.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

Rev. August 2018

      g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that **if** the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.     The Government and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto, which the Government would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

      a.     Pursuant to USSG § 2M5.2(a)(1), the base offense level is 26.

      b.     This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to USSG § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to USSG § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under USSG § 3E1.1(a) and may decline to make a motion pursuant to USSG § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between

the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

   c. Thus, the final adjusted offense level is **23**.

 7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of her income.

### Obligations of the Parties

 8. The Government agrees it will recommend a sentence within the applicable guideline range. The Defendant **is not** constrained in his recommended sentence. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character, and conduct. After sentencing, the Government agrees to dismiss any outstanding charges.

### Waiver of Appeal

 9. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever lawful sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release):

   c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

 10. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

Rev. August 2018

   b. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities including the following items originally seized by law enforcement authorities:

    i. One (1) SCCY Industries, LL.C., Model CPX-2 9mm handgun, serial number C123450;

    ii. One (1) Mossberg, Model MC1SC 9mm handgun, serial number 048329CP;

    iii. One (1) Smith & Wesson, Model SD9VE 9mm handgun, serial number FDF2031;

    iv. One (1) HS Produkt, Model XD-9 9mm handgun, serial number BA239111; and

    v. One (1) Sarsilmaz (Sar Arms), Model B6 9mm handgun, serial number T1102-21E52242;

    vi. One (1) Taurus, Model G2C 9mm handgun, serial number ACC688800;

    vii. One (1) Ruger, Model Security-9 9mm handgun, serial number 384-14158;

    viii. One (1) Beretta, Model APX, 9mm handgun, serial number A132267X;

    ix. One (1) Ruger, Model American Pistol, 9mm handgun, serial number 863-12422;

    x. One (1) Girsan, Model Regard MC 9mm handgun, serial number T6368-21A01109;

    xi. One (1) SAR Arms, Model SAR9 9mm handgun, serial number T1102-21BV66962; and

    xii. Sixteen (16) 9 mm pistol magazines.

   c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging

Rev. August 2018

instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

    d. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

    e. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

11. a. If there is a period of time between entry of plea and the date of sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under USSG § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

    b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

12. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties.

### Entire Agreement

13. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erik L. Barron
United States Attorney

By: _____
P. Michael Cunningham
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

05/02/2023
Date

Eric Nana Kofi AMPONG COKER

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

5/2/2023
Date

Mark E. Sobel, Esq.

9

Rev. August 2018

## ATTACHMENT A
## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Eric Nana Kofi AMPONG COKER, (hereinafter, the defendant or "AMPONG COKER"), age 41, is a resident of Columbia, Maryland. In late April 2021, AMPONG COKER became the subject of an investigation into suspected illegal export of firearms from the Port of Baltimore to Ghana.

A review of records showed that since 2017, AMPONG COKER had purchased at least eighty-one (81) firearms from three different Maryland Federal Firearms Licensees (FFLs). Specifically, he acquired fifty-five (55) firearms from Fox's Firearms, Laurel Maryland, since 2018; twenty-one (21) firearms from A Sales and Supplies, Jessup, Maryland, since 2017; and, five (5) firearms from Haze Line Guns, Laurel, Maryland in 2020.

In 2019, AMPONG COKER received Regulated Firearms Collector status through the Maryland State Police. This status waived the restriction on the number of firearms he could purchase during a given 30-day period. Agents also determined that prior to May 2021, AMPONG COKER had shipped passenger vehicles to Ghana.

In May 2021, AMPONG COKER was surveilled by agents of Homeland Security Investigations ("HIS") and Alcohol, Tobacco, Firearms and Explosives ("ATF"). He was observed retrieving firearms from Fox's Firearms. Later, AMPONG COKER was observed in a variety of locations, including at the Laurel, Maryland, address of East Coast Rigging & Contracting Co., Inc., a business engaged in packaging and shipping items from the Port of Baltimore. Agents surveilled a shipping vehicle that departed this location on May 27, 2021.

On May 29, 2021, AMPONG COKER was subject to a border search as he was departing the United States at Detroit, Michigan, bound for Ghana. Among other items seized in his luggage were foam cutouts used for packaging and securing firearms in gun cases.

In early June 2021, HSI and Customs and Border Protection ("CBP") agents identified a shipping container scheduled to depart the Port of Baltimore for Tema, Ghana, on or about June 14, 2021. Included in the listed contents of the container was a 2018 Toyota Corolla registered to the Defendant. The list of contents of the containerized shipment did not include any firearms.

On June 8, 2021, HSI, ATF, CBP and other agents searched the contents of the shipping container. Within the trunk of the 2018 Toyota Corolla, which had the Defendant's name on

1

cardboard on top of the vehicle, the agents found a grey suitcase. Secreted in the lining thereof, the agents found the following firearms previously purchased by AMPONG COKER:

    a.    One (1) SCCY Industries, LL.C., Model CPX-2 9mm handgun, serial number C123450;

    b.    One (1) Mossberg, Model MC1SC 9mm handgun, serial number 048329CP;

    c.    One (1) Smith & Wesson, Model SD9VE 9mm handgun, serial number FDF2031;

    d.    One (1) HS Produkt, Model XD-9 9mm handgun, serial number BA239111; and

    e.    One (1) Sarsilmaz (Sar Arms), Model B6 9mm handgun, serial number T1102-21E52242;

All these firearms were identified on the United States Commerce Control List. AMPONG COKER had not obtained the required license or written approval from the United States Department of Commerce before attempting to export these weapons to Ghana.

Law enforcement authorities identified another shipping container bound for Ghana containing other vehicles associated with AMPONG COKER. The vessel on which this container was loaded sailed from the Port of Baltimore in May 2021, and was intercepted at sea on or about June 14, 2021, eventually being returned to Baltimore on or about August 20, 2021, without having been off-loaded in Ghana or any other port enroute. On or about August 25, 2021, this container was searched, revealing An examination of this container revealed the following items:

    a.    One (1) Taurus, Model G2C 9mm handgun, serial number ACC688800;

    b.    One (1) Ruger, Model Security-9 9mm handgun, serial number 384-14158;

    c.    One (1) Beretta, Model APX, 9mm handgun, serial number A132267X;

    d.    One (1) Ruger, Model American Pistol, 9mm handgun, serial number 863-12422;

    e.    One (1) Girsan, Model Regard MC 9mm handgun, serial number T6368-21A01109;

    f.    One (1) SAR Arms, Model SAR9 9mm handgun, serial number T1102-21BV66962; and

    g.    Sixteen (16) 9 mm pistol magazines.

All these firearms and the pistol magazines were identified on the United States Commerce Control List. AMPONG COKER had not obtained the required license or written approval from the United States Department of Commerce before attempting to export these weapons to Ghana.

SO STIPULATED:

March 2, 2023

_____
Dated

_____
P. Michael Cunningham
Assistant United States Attorney

05/02/2023
Dated

_____
Eric Nana Kofi AMPONG COKER
Defendant

5/2/2023
Dated

_____
Mark E. Sobel, Esquire
Counsel for Defendant

3